UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ROBERT KALFUS,

                          Plaintiff,                    07 Civ. _____ ( )

      -against-

THE NEW YORK AND PRESBYTERIAN          **COMPLAINT AND**
HOSPITAL; SPECIAL PATROLMAN              **DEMAND FOR**
SERGEANT STEVEN RODRIGUEZ,               **JURY TRIAL**
SPECIAL PATROLMAN ARNOLD PALMER;
SPECIAL PATROLMEN JOHN DOES
# 1-4; THE CITY OF NEW YORK; LIEUTENANT
EUGENE WHYTE; NEW YORK CITY POLICE
OFFICERS JOHN DOES #5-8,

                          Defendants.
------------------------------------------------------------x

        Plaintiff Robert Kalfus, by and through his attorneys, Emery Celli Brinckerhoff & Abady LLP, for his Complaint alleges as follows:

## INTRODUCTION

1.     This is a civil rights action seeking damages for Defendants' violations of Plaintiff's rights, privileges, and immunities under the United States Constitution, and the Civil Rights Act of 1871, 42 U.S.C. § 1983 and New York State common law.

2.     This case is about the wanton physical abuse of a *New York Post* photographer, Robert Kalfus, outside The New York and Presbyterian Hospital, by lawless Hospital security guards, and the subsequent false arrest of that photographer by members of the New York City Police Department ("NYPD") and the Hospital's security guards because Mr. Kalfus was a member of the media.

3.     Plaintiff Robert Kalfus has been employed for more than three decades as a professional news photographer.

1

4.  On the afternoon of May 14, 2007, while Mr. Kalfus was waiting on the side of the steps adjacent to the sidewalk in front of The New York and Presbyterian Hospital, near 177 Fort Washington Avenue in New York, New York, several members of the Hospital's security staff brutally assaulted the Plaintiff without any justification. In an effort to cover up their illegal attack on the Plaintiff, Hospital security guards and NYPD officers then fabricated criminal charges against the Plaintiff, and launched a meritless criminal case against him that required multiple court appearances before the bogus criminal charges were dismissed.

5.  As a result of the shameful and brutal beating, false arrest, and malicious prosecution inflicted on the Plaintiff by the Hospital security guards and members of the NYPD, Robert Kalfus suffered significant physical, emotional, and professional damages.

## THE PARTIES

6.  Plaintiff Robert Kalfus is a citizen of the United States and at all relevant times was a resident of the County of Bronx, State of New York.

7.  On information and belief, Defendant The New York and Presbyterian Hospital is a New York hospital licensed by the State of New York pursuant to Article 28 of the New York Public Health Law ("NYPH" or "Hospital"). NYHP operates on four campuses, including Columbia Presbyterian Medical Center, New York Weill Cornell Medical Center, the Allen Pavilion, and the Westchester Division. At all times relevant hereto, NYPH was responsible for the policy, practice, supervision, implementation, and conduct of all NYPH matters and was responsible for the appointment, training, supervision, and conduct of all security guards and special patrolmen employed by or at

NYPH. In addition, at all relevant times, NYPH was responsible for ensuring that security guards, including special patrolmen, employed by or at NYPH obey the laws of the United States and of the State of New York.

8. At all times relevant hereto, defendant Arnold Palmer, Badge #08, was a Special Patrolman appointed by the NYPD Commissioner and employed or contracted by New York Presbyterian Hospital solely to provide security for NYPH, and acting in his capacity as agent, servant, and employee of NYPH and/or the City of New York, and within the scope of his employment as such.

9. At all times relevant hereto, defendant Sergeant Steven Rodriguez was a Special Patrolman appointed by the NYPD Commissioner and employed or contracted by New York Presbyterian Hospital solely to provide security for NYPH, and acting in his capacity as agent, servant, and employee of NYPH and/or the City of New York, and within the scope of his employment as such.

10. At all times relevant hereto, defendants John Does # 1-4 were security guards and/or special patrolmen at NYPH appointed by the NYPD Commissioner and employed or contracted by New York Presbyterian Hospital solely to provide security for NYPH, and acting in their capacity as agent, servant, and employee of NYPH and/or the City of New York, and within the scope of their employment as such (together with Special Patrolmen Palmer and Rodriguez, the "Special Patrolmen Defendants").

11. Defendant City of New York ("the City") is a municipality organized and existing under the laws of the State of New York. At all times relevant hereto, the City, acting through the NYPD, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the

appointment, training, supervision, and conduct of all NYPD personnel. In addition, at all relevant times, the City was responsible for enforcing the rules of the NYPD (and regulations of the NYPD patrol guide), and for ensuring that the NYPD personnel obey the laws of the United States and of the State of New York. The City, through the NYPD, also has broad appointment and oversight powers over special patrolmen. *See* N.Y.C. Admin. Code § 14-106.

12.     At all times relevant hereto, defendant Lieutenant Eugene Whyte, was a police officer of the NYPD, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. On information and belief, Defendant Whyte was also working in the office of the Deputy Commissioner of Public Information (DCPI).

13.     At all times relevant hereto, defendants John Does # 5-8 were police officers employed by and/or under the supervision of the New York Police Department, acting in their capacity as agents, servants, and employees of the City of New York, and within the scope of their employment as such (together with Lt. Whyte, the "Police Officer Defendants").

14.     At all times relevant hereto, defendants Special Patrolman Arnold Palmer, Special Patrolman Sergeant Steven Rodriguez, Special Patrolmen John Does #1-4; Lieutenant Eugene Whyte, and Police Officers John Does # 5-8 (collectively "the Individual Defendants") were acting under the color of state law.

## JURISDICTION AND VENUE

15.     This action arises under the First, Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988 and New York state common law.

16.     The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a), and the doctrine of pendent jurisdiction.

17.     The acts complained of occurred in the Southern District of New York, and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

18.     This action has been commenced within one year after the happening of the event upon which the claim is based.

## JURY DEMAND

19.     Plaintiff demands trial by jury in this action.

## FACTUAL ALLEGATIONS

22.     Mr. Kalfus is 55 years old. He is a photographer for the *New York Post* and, through his talents and hard work, has achieved great success in his career over the past 33 years. In that time, he has received numerous awards as a *New York Post* photographer and has twice been nominated for the Pulitzer Prize.

23.     On May 14, 2007, the *New York Post* dispatched Mr. Kalfus to The New York and Presbyterian Hospital, at 177 Washington Avenue, New York, New York, to attempt to take a photograph of Joe Torre, the manager of the New York Yankees. Mr. Torre was expected to be visiting his brother, Frank, in the hospital that day.

24.  A posting on the Hospital's own website around this time, confirmed that Frank Torre's presence at the hospital was public information, as the Associated Press had reported on May 2, 2007.

25.  Mr. Kalfus arrived at the hospital at about 11:00 a.m. at the Hospital's Fort Washington Avenue entrance.

26.  Mr. Kalfus wore his camera clearly visible in plain sight, and was clearly a member of the press.

27.  Mr. Kalfus remained in the area for several hours, waiting for the opportunity to take Mr. Torre's picture. In doing so, he spent nearly all of his time outside the hospital on the sidewalk next to the public street and on a set of stairs.

28.  This area, immediately in front of the hospital, was open to the public, who enjoyed broad and unimpeded access to the area throughout the day. There were no signs prohibiting the public's presence in the area. Throughout the day, members of the public freely accessed the hospital and sat on the steps and the side of the steps eating, smoking, reading and waiting.

29.  There is a distance of at least ten yards between where Mr. Kalfus waited for much of the day (the sidewalk and the stairs) and the hospital entrance. In this gap, there is a roadway for valet parking where a company called QuickCheck operates some of its business.

30.  Other press arrived at the hospital throughout the day including representatives from other print sources and television crews. Among them was Sam Costanza, a photographer for the *New York Daily News*.

31. At around 4:35 p.m., the Special Patrolmen Defendants decided to remove Mr. Kalfus from the public steps because he was a member of the press.

32. First, Arnold Palmer, Badge #08, asked Mr. Kalfus to leave the premises, at which time Mr. Kalfus told Patrolman Palmer that he was a member of the press, and that members of the public freely used the public area where Mr. Kalfus was standing.

33. Mr. Kalfus demonstrated his press status by prominently displaying his press credentials around his neck.

34. Five minutes later, at approximately 4:40 p.m., Sergeant Rodriguez arrested Mr. Kalfus on the stairs next to the sidewalk for trespassing.

35. The Special Patrolmen Defendants grabbed Mr. Kalfus and dropped him face-first onto the stone beside the public access steps. They proceeded to twist his arms behind his back and place him in handcuffs. While one Special Patrolman pinned Mr. Kalfus's knee, the others demanded that he get up. Unable to move, Mr. Kalfus asked them to get off his knee. Instead, the Special Patrolmen Defendants yanked Mr. Kalfus up by his handcuffs with such force that they tore his right shoulder rotator cuff and caused him excruciating pain. On information and belief, the Special Patrolmen Defendants also broke Mr. Kalfus's thumb. As Mr. Kalfus screamed in agony, the Special Patrolmen dropped him onto his face with his hands still handcuffed behind his back.

36. Mr. Kalfus did not in any way assault or resist the Special Patrolmen.

37. The Patrolmen took Mr. Kalfus to the Hospital's security office across the street. Once inside the building, the Special Patrolmen slammed Mr. Kalfus into an open elevator. While riding in the elevator, Special Patrolmen John Doe #1 assaulted Mr.

Kalfus again by putting his hand down the back of Mr. Kalfus's pants, inside his underwear, shoving his fingers towards Mr. Kalfus's anus.

38. For several hours at the Hospital security office, the Special Patrolmen kept Mr. Kalfus rear-handcuffed in a chair and refused his requests for medical attention, to use the restroom, to make a phone call and to have an attorney present. The Special Patrolmen also subjected Mr. Kalfus to interrogation without first reading him his Miranda rights.

39. The Special Patrolmen detained Mr. Kalfus at the hospital security office for approximately two and a half hours.

40. Although Mr. Kalfus was in a hospital and required urgent medical attention, the Special Patrolmen Defendants denied him access to any medical care.

41. Special Patrolman Arnold Palmer and one other Hospital Special Patrolman then put Mr. Kalfus into a Columbia Presbyterian Hospital security car and drove him to be arraigned at the NYPD 33rd Precinct, escorted by NYPD Police Officers in their own car(s).

42. While at the 33rd Precinct, Lieutenant Eugene Whyte confiscated Mr. Kalfus's Press Card.

43. Lt. Whyte did so without any justification.

44. Lt. Whyte retained Mr. Kalfus' Press Card for approximately seven weeks.

45. Lt. Whyte took Mr. Kalfus's press credentials in retaliation for Mr. Kalfus' exercise of his First Amendment rights as a photographer and as a member of the press.

46. A Press Identification card is necessary for any member of the press to perform their job. Without the Press Card, a member of the press, and especially a photographer, is substantially impeded from performing his job, and unable to obtain admission to Press events. For example, without his Press Card, Mr. Kalfus could not bring his cameras into many New York State courthouses to cover and photograph trials.

47. Lt. Whyte also took Mr. Kalfus's Press Card in retaliation for a previous incident in which Mr. Kalfus argued with Lt. Whyte over his rights as a member of the press. In October 2006, Mr. Kalfus attempted to take pictures from an area in Van Cortlandt Park, Bronx, which was available to the public. After several police officers forced Mr. Kalfus out of that area, Mr. Kalfus protested to Lt. Whyte that he should not be prevented from taking photographs. At that time, Lt. Whyte ordered Mr. Kalfus to hand over his Press Identification Card which Lt. Whyte retained for more than an hour.

48. At no time during the entire detention of Mr. Kalfus, notwithstanding his repeated requests of medical care and the serious injuries he suffered, did any of the Individual Defendants permit Mr. Kalfus access to any medical aid.

49. The Individual Defendants arrested and charged Mr. Kalfus without probable cause.

50. Lt. Whyte told Mr. Kalfus that he would arrange to have a Desk Appearance Ticket issued to him. Shortly thereafter, a Desk Appearance Ticket was given to Mr. Kalfus, returnable June 13, 2007.

51. On May 22, 2007. Special Patrolman Peace Officer Steven Rodriguez filed formal criminal charges of one count of Trespass under P.L. § 140.05; and one count of Resisting Arrest under P.L. § 205.30 against Mr. Kalfus.

52. Over the next three months, Mr. Kalfus was forced to appear in criminal court on multiple occasions to defend himself against the charges brought against him. Mr. Kalfus was repeatedly required to take time off from his job to attend these court appearances.

53. On August 14, 2007, the prosecution moved to dismiss the case against Mr. Kalfus on the grounds that it could not prove the charges against him beyond a reasonable doubt and all charges were dismissed.

54. As a result of Defendants' conduct described above, including in assaulting, restraining, falsely arresting, falsely imprisoning, and illegally searching Mr. Kalfus, Mr. Kalfus suffered serious physical and emotional injury, pain and suffering, emotional distress, mental anguish, humiliation and embarrassment.

55. The arrest, detention, and prosecution of Mr. Kalfus lacked probable cause, and were done maliciously, falsely, and in bad faith. Defendants acted in wanton and reckless disregard for the rights of Mr. Kalfus.

56. As a direct and proximate result of Defendants' unlawful conduct, Mr. Kalfus has suffered and/or continues to suffer physical pain and suffering, reputational injury, legal and medical expenses, psychological pain, suffering, and mental anguish, and other losses.

57. Mr. Kalfus has also suffered professional harm because he has lost work as a direct result of the harm alleged herein.

58. The Hospital either knew or should have known that the Special Patrolmen Defendants were prone to violence and were likely to engage in the use of unjustified physical force.

59. At all times relevant hereto, the Special Patrolmen Defendants were acting within the scope of their employment by the Hospital, and the Hospital is liable under respondeat superior for the Special Patrolmen Defendants' conduct.

60. At all times relevant hereto, the Special Patrolmen Defendants, imbued with special police powers under N.Y.C. Admin. Code § 14-106, were acting under color of New York State law.

61. The City either knew or should have known that the Police Officer Defendants were prone to violence and were likely to engage in the use of unjustified physical force.

62. At all times relevant hereto, the Special Patrolmen Defendants were acting under color of state law, as willful participants, engaged in joint activity with the Police Officer defendants, and acted in concert with the Police Officer defendants to effect an unlawful arrest and prosecution.

63. On August 10, 2007, within ninety days after the claim alleged in this Complaint arose, a written notice of claim was served upon Defendants by personal delivery of the notice, in duplicate, to the Comptroller's office at 1 Centre Street, New York, New York.

64. At least thirty days have elapsed since the service of the notice of claim, and adjustment or payment of the claim has been neglected or refused.

65. On September 24, 2007, within ninety days after the malicious prosecution claim alleged in this Complaint arose, a written amended notice of claim was served upon Defendants by personal delivery of the notice, in duplicate, to the Comptroller's office at 1 Centre Street, New York, New York.

66.   At least thirty days have elapsed since the service of the amended notice of claim, and adjustment or payment of the claim has been neglected or refused.

67.   This action has been commenced within one year and ninety days after the happening of the event upon which the claim is based.

### FIRST CAUSE OF ACTION
42 U.S.C. § 1983
(Against the Individual Defendants)

68.   Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

69.   By the above, and by arresting and imprisoning Mr. Kalfus without probable cause, using excessive force, assaulting him, unreasonably seizing and searching him, falsely imprisoning him, falsifying an account of the events surrounding the arrest and assault of Mr. Kalfus upon which a criminal complaint was based, making false statements under oath in the criminal court complaint against Mr. Kalfus, maliciously prosecuting him, removing his press card for seven weeks, targeting and retaliating against him because of his exercise of First Amendment rights and based on his status as a member of the press, denying him medical treatment with reckless, callous, shocking, and unconscionable disregard for his health and safety, and failing to take steps to intercede and protect Mr. Kalfus from the above, the Individual Defendants deprived Plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the First, Fourth and Fourteenth Amendments to the United States Constitution.

70. In addition, the Individual Defendants conspired among themselves to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983 and by the First, Fourth and Fourteenth Amendments to the United States Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

71. Defendants acted under pretense and color of state law and in their individual and official capacities and/or within the scope of their respective employments as NYPD officers and Special Patrolmen Defendants. Said acts by the Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the First, Fourth and Fourteenth Amendments to the United States Constitution.

72. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages herein before alleged.

**SECOND CAUSE OF ACTION**
Assault and Battery
(Against NYPH and the Special Patrolmen Defendants)

73. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

74. Defendants, acting within the scope of their employment, intentionally, willfully, and maliciously assaulted Plaintiff in that they had the real or apparent ability to cause imminent harmful and/or offensive bodily contact and intentionally did violent and/or menacing acts which threatened such contact to Plaintiff, and that such act(s) caused apprehension of such contact in Plaintiff.

75.  Defendants, acting within the scope of their employment, intentionally, willfully, and maliciously battered Plaintiff when they, in a hostile and/or offensive manner, struck, seized, and searched Plaintiff without his consent, and with the intention of causing harmful and/or offensive bodily contact to Plaintiff.

76.  The Hospital, as the employer of the Special Patrolmen Defendants, is responsible for their wrongdoing under the doctrine of respondent superior.

77.  As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

### THIRD CAUSE OF ACTION
False Arrest and False Imprisonment
(Against All Defendants)

78.  Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

79.  By the actions described above, the Defendants falsely arrested, falsely imprisoned and detained Mr. Kalfus without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so. The acts and conduct of defendants were the direct and proximate cause of injury and damage to Mr. Kalfus and violated his common law rights guaranteed to them by the laws of the State of New York.

80.  The City, as the employer of each of the NYPD Defendants, is responsible for their wrongdoing under the doctrine of respondent superior.

81.  The Hospital, as the employer of the Special Patrolmen Defendants, is responsible for their wrongdoing under the doctrine of respondent superior.

82.  As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

## FOURTH CAUSE OF ACTION
Negligence
(Against NYPH and the Special Patrolmen Defendants)

83. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

84. NYPH and the Special Patrolmen Defendants owed a duty of care to Plaintiff.

85. Defendants breached that duty of care by unreasonably searching Plaintiff, assaulting, attacking, and beating Plaintiff with extreme force, and by (at a minimum) negligently failing to provide prompt and appropriate medical care.

86. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

87. All of the foregoing occurred without any fault or provocation by Plaintiff.

88. The Hospital, as the employer of the Security Guard Defendants, is responsible for their wrongdoing under the doctrine of respondent superior.

## FIFTH CAUSE OF ACTION
Negligent Hiring, Training, Discipline, and Retention of
Employment Services
(Against The City and NYPH)

89. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

90. The City, through the NYPD, owed a duty of care to Plaintiff to prevent the physical and mental abuse sustained by Plaintiff. Under the same or similar circumstances, a reasonable, prudent, and careful person would have anticipated that an injury to Plaintiff or to those in a like situation would probably result from this conduct.

91. The Hospital owed a duty of care to Plaintiff to prevent the physical and mental abuse sustained by Plaintiff. Under the same or similar circumstances, a reasonable, prudent, and careful person would have anticipated that an injury to Plaintiff or to those in a like situation would probably result from this conduct.

92. Upon information and belief, the Individual Defendants were unfit and incompetent for their positions as police officers and/or security guards.

93. Upon information and belief, the City and the Hospital knew or should have known through the exercise of reasonable diligence that the Individual Defendants were dangerous.

94. Upon information and belief, the City's and the Hospital's negligence in hiring, training, disciplining, and retaining the Individual Defendants proximately caused Plaintiff's lasting physical, mental, emotional and professional injuries and scars.

95. Upon information and belief, because of the City's and the Hospital's negligent hiring, training, discipline, and retention of the aforementioned Individual Defendants, Plaintiff incurred significant and lasting physical, mental, and professional injuries.

### SIXTH CAUSE OF ACTION
Malicious Prosecution
(Against NYPH, Sergeant Rodriguez, Lt. Whyte,
Special Patrolman Officers John Does #1-4, and New York City)

96. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

97. NYPH, Special Patrolman Rodriguez and Special Patrolmen John Does #1-4 (the "Hospital Defendants") maliciously commenced criminal proceedings against Plaintiff, charging him with trespass and resisting arrest.

98. Hospital Defendants charged Plaintiff with these crimes falsely, maliciously, in bad faith, and without probable cause.

99. After proceedings in criminal court in which Plaintiff was forced to defend himself, all charges against Plaintiff were terminated in Plaintiff's favor.

100. Hospital Defendants, their officers, agents, servants, and employees were responsible for the malicious prosecution of Plaintiff during this period of time.

101. Defendant City, which through the Commissioner is the entity responsible for appointing the Special Patrolmen Defendants, is responsible for their wrongdoing under the doctrine of respondeat superior.

102. Defendant Hospital as employer of the Special Patrolmen Defendants is responsible for their wrongdoing under the doctrine of respondeat superior.

103. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

    a.    Compensatory damages in an amount to be determined at trial;

    b.    Punitive damages;

    c.    Reasonable attorneys' fees and costs under 42 U.S.C. § 1988;

    d.    Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       December 20, 2007

EMERY CELLI BRINCKERHOFF
& ABADY LLP

By: _____
    Ilann M. Maazel (IM 5724)
    O. Andrew F. Wilson (OW 50962)

75 Rockefeller Plaza, 20th Floor
New York, New York 10019
(212) 763-5000

*Attorneys for Plaintiff Robert Kalfus*